STAPEES, J-,
delivered the opinion of the court.
In the argument of this case here several interesting questions of commercial law were discussed by counsel. But their decision is not deemed necessary in the view we have taken of the merits of the controversy. It is conceded that the notes endorsed by the appellant were not protested, and that notice was not given of their non-payment Is this such laches in the bank, the holder of the notes, as discharges the appellant? It appears ■ that on the 25th of July. 1873 — the day upon which the notes were made by Benjamin S. Hooper, and endorsed by the appellant, the latter gave to the bank a deed of trust to secure their payment upon certain real estate owned by him; and in that deed it was expressly covenanted and agreed, that upon default made in payment of either of said notes, or any part thereof, the trustee, upon request of the proper officer of the *411 bank, after thirty days’ notice, should sell the estate therein conveyed for cash. Nothing is said in the deed with respect to demand, protest, and notice. The right of the bank to enforce the trust was complete, upon default being made. Upon the happening of that event, the liability of the appellant became complete so far as the property was concerned.
The case of Mory v. King. 7 Eng. C. L. R. 57, cited by counsel for the appellee is directly in point. There the appellant pleaded that the bill when due had not been presented to the acceptor for payment, and that *due notice of the dishonor had not been given. The plaintiff in reply, relied upon the bond of the defendant. Chief Justice Abbott, with whom the other justices concurred, said — “The bond is given by Tuffenel, and the defendant who were both parties to the bill. Now in that character, if no bond had been given, it is clear they would have been liable in case the formalities stated in the pleas had been complied with; and if the only .object of the bond had been to give the plaintiff a security of a higher nature, and to make the party liable in case those formalities had not been complied with, I think we should have found it so expressed in the deed, and not finding it there, I therefore conclude that the parties meant to engage to pay the bill at all events, as sureties for the acceptor, in case he did not pay it.” She also Hilton v. Catherwood, 10 Ohio St. R. 109; Mitchell v. Clark & Hodgson, 35 Verm. R. 104.
Here it is to be observed the action is not on the notes, but it is a proceeding under the deed. If the appellant intended to insist upon demand and notice, before liability of his property should attach, it is fair to presume he would have so provided. As he has failed to do so, the presumption is he intended to waive these formalities, and there was very good reason for his so doing. The evidence tends strongly to show, that there were unsettled matters between the appellant and the maker of the note; that the appellant had in his own hands means of indemnity against any loss growing out of his endorsement, if indeed he was not actually indebted to the maker in an amount sufficient to cover both notes.
The learned counsel for the appellant insists, however, that the testimony relied on to establish the existence of this indemnity or indebtedness is merely hearsay. The witness who testified on this point, says, the *appellant referred him to the maker for confirmation upon the subject of the indebtedness, and the maker in response to the inquiries of the witness who was a director in the bank, explained the arrangements between the appellant and himself, by which the former was indemnified and protected. If this be true, it fully explains the fact that the appellant agreed that his property should be forced upon the market at a cash sale, upon thirty days’ notice, to pay the whole amount of the debt. That the appellant considered himself the real debtor, and as absolutely bound, upon default made, is proved by the further fact that after the dishonor of the notes, he not only recognized his liability for them, but he repeatedly promised payment; he asked for indulgence and entered into negotiations for a postponement of the sale of his property.
During the whole two years following the dishonor of the notes, these promises were repeatedly made, and these negotiations were going on. Not a word was said about the failure to protest the notes. The matter was never alluded to till it was suggested by counsel, retained to prevent a sale, after every effort for further indulgence had failed.
It has been said, that the appellant at the time he made those promises was not aware of the failure to protest the notes. The only testimony offered in support of the alleged ignorance, is the opinion of a witness, derived from an inquiry made by the appellant, himself. It is worthy of observation that the appellant has never said he was ignorant of the failure to protest the notes. He has made no such allegation in his bill. And although he has known from the beginning that the bank relied upon these promises, he has not attempted to avoid their effect, as he might have done by giving his own deposition, and by proving he was ignorant of the laches of the bank at the time they *were made. Throughout, he has been studiously silent with to the matter of demand and notice.
Under such circumstances, the appellant’s repealed acknowledgments of liability and promise to pay, must be held sufficient proof of an agreement to waive demand and notice. Second Daniel on Negotiable Inst.,' section 1147 to 1162; Walker v. Laverty, 6 Munf. 487; Pate v. McCluer, 4 Rand. 164.
Tt is insisted, however, and much stress is laid on this point, that although the appellant may have waived notice to himself, he did not thereby dispense with notice to the first endorser. That the bank ought to have given the latter notice of the non-payment of the notes; and having failed to do so, the first endorser is discharged, and the appellant deprived of all recourse upon him. This, however, is a misconception of the duties of the bank. Where there are several successive endorsers of a note, the holder may and ordinarily does, give notice to all, with a view to preserve his recourse upon all. But he is not bound to do so. He may, if he pleases, give notice to any one of the endorsers; and that endorser, if he desires to have recourse upon any antecedent endorser, must use due diligence in giving notice of the dishonor of the note.
The bank might in this case have given notice to the first endorser, and if it desired to hold him liable, it was necessary to give such notice. But it was under no obligation to do so for the benefit of the. appellant as second endorser. Nor was it essential it should do so in order to preserve its rights against the appellant. The deed imposed no additional duty upon the bank with respect to protest and notice.
The fact is, it imposed no duty of any kind. *412 It is a covenant by the appellant that upon default being made in the payment of the notes, the trustee shall sell the property and apply the proceeds to their payment. *There is no other condition. To say that this deed imposes upon the bank the duty of giving notice to the first endorser for the benefit of the appellant is to assert stipulations not found in the instrument, and which do not legitimately arise out of the transaction-itself.
It would seem, however, that none of the parties looked to the first endorser. During the entire two years following-the dishonor of the notes, no allusion was made to him. The appellant did not enquire whether he had notice, nor did he complain that the first endorser had been discharged by the laches of the bank. This may have been due to the fact that the first endorser was known to be insolvent; or it may have been that the appellant-, by the execution of the trust deed, and by his arrangements with the maker, had made himself liable absolutely for the debt, and was so understood to be by all the parties. Whatever may have been the reasons, we think the appellant is not discharged by the failure of the bank to have the notes protested and to give notice of nonpayment to either of the endorsers. We are therefore of opinion the decree of the circuit court is plainly right, and must be affirmed.
Decree affirmed.